IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EASTER BROWNLOW,**

    **Plaintiff,**

    v.                                     Case No. 2:10-CV-524
                                              JUDGE GRAHAM
                                              MAGISTRATE JUDGE KING

**OHIO REFORMATORY
FOR WOMEN WARDEN
GININE TRIM,** *et al.,*

    **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Defendants' *Motion for Judgment on the Pleadings*, Doc. No. 16. For the reasons that follow, it is recommended that the motion be granted in part and denied in part.

### I.

Plaintiff Easter Brownlow ["Plaintiff"] brings this action pursuant to 42 U.S.C. § 1983 claiming that the Defendants were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment to the United States Constitution. Defendants in this action are: Ginine Trim, Warden of the Ohio Reformatory for Women ["ORW"]; Marta Raneri, Inspector of Institutional Services at ORW; Nurse Smith, Quality Improvement Coordinator at ORW; Mona Parks, Chief Inspector of Institutional Services; and Dr. Akusoba,[1] a medical doctor employed by

---

[1] The *Complaint* also named as a Defendant one Dr. Spagna, who is deceased. The claim asserted against this Defendant has been dismissed. *Order,* Doc. No. 15.

the Ohio Department of Rehabilitation and Correction ["ODRC"].  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

In her *Complaint*, Plaintiff alleges that she is diabetic and suffers from neuropathy. *Complaint*, Doc. No. 1, at ¶ 3.  In May 2008, "a bone in her foot was fractured and there were indications that the bone was infected," *id.* at ¶ 16,  conditions that were aggravated by her diabetes and neuropathy, *id.* at ¶ 17.  Plaintiff further alleges that Defendants knew of Plaintiff's diabetes and neuropathy.  *Id.* at ¶ 18.

Plaintiff claims that she "endured twelve days with a fractured foot before she was placed in a non-custom, standard 'walking boot.'" *Id.* at ¶ 20.  According to Plaintiff, the "walking boot" exacerbated the fracture and caused Plaintiff "severe pain and discomfort." *Id.* at ¶ 22. In August 2008, *i.e.*, three months after receiving the "walking boot," Plaintiff's foot was placed in a cast. *Id.* at ¶ 21.  The cast allegedly "lacerated [Plaintiff's] fractured foot, causing sores and increasing her suffering." *Id.* at ¶ 24.

Plaintiff claims that her request to see a podiatrist was denied. *Id.* at ¶ 23.  At some point, Plaintiff was treated at the Ohio State University Medical Center and a new cast was placed on Plaintiff's foot. *Id.* at ¶ 25.  Plaintiff alleges in her *Complaint* that she was informed that the first cast was "inadequate" and that the antibiotic initially prescribed was "wrong." *Id.* at ¶¶ 25, 27.  According to Plaintiff, a bone scan of her foot confirmed an infection. *Id.* at ¶ 26.

In mid-September 2008, Plaintiff was told by "orthopedics at the [Corrections Medical Center] that her cast was to be changed every week and that she would need follow up ex-rays [*sic*]." *Id.* at ¶ 32.  The cast was removed, however, and Plaintiff was given crutches. *Id.* at ¶ 33. Plaintiff claims that the fracture continued to cause her pain into 2009. According to Plaintiff, she "cannot walk normally, [ ] experiences debilitating pain in her left ankle, knees, and back, and her

foot is permanently deformed." *Id.* at ¶ 37.

In addition to the problems with her foot, Plaintiff alleges that she did not receive medication for "several days" in June 2009 and was denied an appointment at the infirmary. *Id.* at ¶¶ 40, 41. Plaintiff was treated again at the Ohio State University Medical Center in June 2009 for "severe dehydration and acute renal failure." *Id.* at ¶ 44. According to Plaintiff, this was a result of her "never receiv[ing] her diabetic diet" and medication. *Id.* at ¶¶ 47, 48. Plaintiff alleges that the Defendants in this case were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment.

## II.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is resolved by reference to the same standard applicable to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Penny/Olmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). Thus, all the factual allegations in the complaint are accepted as true and a motion for judgment on the pleadings will be granted only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Id.* at 555. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

## III.

**A. Eighth Amendment Standards**

The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the

Eighth Amendment . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components." *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008). The burden is on a plaintiff to show a "sufficiently serious medical need to satisfy the objective component." *Id.* A condition is "sufficiently serious" when the need for medical care is obvious even to a lay person. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The requisite state of mind "entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Not every claimed denial of adequate medical treatment constitutes a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. at 105. The United States Court of Appeals for the Sixth Circuit distinguishes "between cases where a complaint alleges a complete denial of medical care and those cases where the claim is that the prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that actually sound in state tort law. *Id.*

Moreover, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show the personal involvement of each defendant with respect to the alleged constitutional violation. Liability based on a theory of *respondeat superior* is not cognizable under § 1983. *See Turner v.*

*City of Taylor*, 412 F.3d 629, 649 (6th Cir. 2005); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). In order to be held liable under § 1983, a defendant with supervisory authority must have either "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.*

**B. Analysis**

In this case, Defendant Warden Trim argues that Plaintiff's claim against her cannot proceed because Plaintiff has failed to allege that this Defendant was personally involved with Plaintiff's medical care. Indeed, the *Complaint* is devoid of any allegation that Defendant Warden Trim was personally involved in the circumstances surrounding Plaintiff's medical treatment. In her response to the motion, Plaintiff merely asserts that the Defendant Warden "is responsible for the promulgation and implementation of the procedures for the most basic of medical care in [ORW]." *Plaintiff's Response to Motion for Judgment on the Pleadings*, Doc. No. 19, at 3. Plaintiff does not identify, either in the *Complaint* or in her response, those procedures – or absence of procedures – that caused the claimed constitutional violation. Because Plaintiff has not alleged that Defendant Warden Trim either encouraged or directly participated in the claimed denial of medical care, the Court concludes that this Defendant is entitled to judgment.

Defendant Parks, Assistant Chief Inspector for the ODRC, and Defendant Raneri, Institutional Inspector at ORW, contend that Plaintiff fails to state a claim for relief against them. Plaintiff complains that Ms. Raneri found no violation of department policy with respect to Plaintiff's grievance and that Ms. Parks affirmed this determination. *Complaint*, at ¶ 15. Plaintiff claims that this disposition of her grievance "directly contradicted the Corrections Medical Center radiologist's report regarding increased fragmentation of [Plaintiff's] fractured foot." *Id.* at ¶ 29.

Plaintiff makes no other allegations in her *Complaint* as to the involvement of Defendants Parks and Raneri in Plaintiff's medical treatment.

Defendants Raneri and Parks argue that the manner in which they handled Plaintiff's grievance is not actionable under § 1983. The Court agrees. "[T]o the extent that an inmate is dissatisfied with the responses to his grievances, [she] [fails] to state a claim on which relief may be granted." *Proctor v. Applegate*, 661 F.Supp.2d 743, 766 (E.D. Mich. 2009) (citations omitted). Although prisoners have a First Amendment right to file grievances, there is no liberty interest in the grievance procedure itself. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Thus, a prisoner cannot premise a § 1983 claim on allegations regarding the grievance resolution procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)). Defendants Parks and Raneri are likewise entitled to judgment.

The remaining Defendants in this case are Nurse Smith and Dr. Akusoba. These Defendants argue that Plaintiff's Eighth Amendment claim cannot proceed against them because her claim is "speculative, generalized and conclusory . . . ." *Motion for Judgment on the Pleadings*, at 5. However, the Court concludes that the *Complaint*, fairly read, alleges that these defendants were deliberately indifferent to Plaintiff's serious medical needs. Those allegations are sufficient, at this juncture, to overcome the motion for judgment on the pleadings.

**WHEREUPON**, it is **RECOMMENDED** that Defendants' *Motion for Judgment on the Pleadings*, **Doc. No. 16**, be **GRANTED** in part and **DENIED** in part. It is **SPECIFICALLY RECOMMENDED** that, as it relates to Defendants Trim, Raneri and Parks, the motion be **GRANTED** and that, as it relates to Defendants Smith and Akusoba, the motion be **DENIED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that

party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Foundation of Teachers, Local 231, etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

May 6, 2011